Mark M. Horblit v. Commissioner.
Horblit v. Commissioner
Docket No. 100063.
United States Tax Court
1943 Tax Ct. Memo LEXIS 516; 1 T.C.M. (CCH) 390; T.C.M. (RIA) 43012; January 9, 1943
*516 Held, certain bad debt deductions taken in 1934 allowed; others disallowed. Petitioner, a lawyer, agreed in a contract of employment with his brother, also a lawyer, that he would credit an indebtedness owed by his brother with one-fifth of legal fees received by petitioner in 1934 from special cases in which his brother assisted him. Pursuant to this agreement petitioner credited his brother with the amount of $8,578.47 in 1934 and the brother included this amount in his income tax return in that year. Held, the sum in question should have been returned as gross income by petitioner but that petitioner is entitled to a deduction of the same amount as an ordinary and necessary business expense. Harry Bergson, Esq., for the petitioner. James T. Haslam, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax against petitioner for the calendar year 1934 in the amount of $1,779.02. The first issue is whether petitioner is entitled to a bad debt deduction of amounts aggregating $6,445. The second issue is whether petitioner is taxable on $8,578.47 received by him but which he alleged belonged to his brother. Findings *517 of Fact Petitioner is a resident of Newton, Middlesex County, Massachusetts. He has been engaged in practice as a lawyer for over thirty-five years. In 1927 and 1928 petitioner made loans to William H. Burgess aggregating $3,168. Burgess died in 1928, at which time there were pending two suits instituted by petitioner for Burgess against Bowen Tufts and C. D. Parker and Company, Inc., for $100,000 each. In addition prior to the death of Burgess, petitioner on behalf of Burgess had commenced a bill in equity against C. D. Parker and Company, Inc., Bowen Tufts and the Massachusetts Cities Realty Company, Inc., to recover twenty-five per cent of the stock of Massachusetts Cities Realty Company, Inc. and twenty-five per cent of all fees, emoluments and commissions realized by Bowen Tufts and C. D. Parker and Company. Upon the death of Burgess, his administratrix, Mrs. Burgess, was submitted as party plaintiff in these suits. These suits were disposed of late in 1933. As counsel for Burgess' estate petitioner also handled a claim for the recovery of an amount arising out of an investment in a company which was promoting a patented strop for stropping razors. Burgess had been the chief *518 stockholder and leading factor in this company. In 1934 it was determined that the claim was without value. On April 2, 1934 a judgment was recovered against the Burgess estate by the trustee in bankruptcy of one Dorothy G. Hall in the amount of $63,841.60 in a suit which had been commenced in 1930. In March 1934, petitioner received information that the Burgess-Lang Building in Lowell, Massachusetts, in which Burgess at the time of his death had held shares, was being sold for taxes. After the Hall judgment against the Burgess estate there were no assets in the estate for creditors and petitioner withdrew as counsel for the estate. The estate was closed in 1934 as insolvent. In 1934 petitioner ascertained that his claims against the Burgess estate were worthless. During the taxable year petitioner did not keep formal books but charged off the Burgess debts in question by making a notation on a card. In 1925 and 1928 petitioner made loans aggregating $2,300. to Max M. Kalman, an architect and a lawyer by profession. Until 1934 Kalman promised petitioner from time to time that he would start paying off these loans as soon as he had paid off other smaller loans which petitioner *519 had made to him and on which he made payments from time to time. In 1934 petitioner learned that supplementary proceedings had been commenced by S. S. Pierce Company against Kalman in the Municipal Civil Court of Boston. This process was the result of an execution issued on December 16, 1933. That court dismissed the proceedings by reason of its findings that Kalman had "no property and is not able to pay." After this adjudication, petitioner was informed by Kalman that he could not pay off the loans in question. Thereupon in 1934 petitioner determined the debt owed by Kalman to be worthless and charged it off in that year. In 1928 petitioner made loans aggregating $377. either to Thomas M. Vinson personally or to Thomas M. Vinson as administrator of the estate of John T. Collins for the purpose of developing a patent covering a method of making bakelite for tiles and other uses from the waste products of certain mills "without resort to the phenol formaldehyde condensation process." Prior to 1934 Vinson informed petitioner, from time to time, that he was hopeful that the patented process would work. In 1934 Vinson informed petitioner that a proceeding had been instituted for infringement *520 of the patent by a holder of a prior patent and also that there were so many difficulties in the way of making the product by means of the patented process that further efforts would have to be abandoned. In 1934 petitioner learned that Vinson had given up his law office, had no telephone and was being hounded and sued because he had put so much money into the patented process experiment. In 1934 petitioner was owed an unpaid balance of $300. on a joint and several promissory note of Louis J. and Jennie Bennett in the amount of $1,605.94 dated November 1, 1928, secured by a second mortgage on real estate located in Arlington, Massachusetts. In 1932 Louis J. Bennett filed a voluntary petition in bankruptcy and received his discharge March 7, 1933. The note in question and the mortgage which secured it were not scheduled in the bankruptcy proceedings and were at the time of the discharge in bankruptcy still outstanding and held by petitioner. In 1933 the first mortgage foreclosed his mortgage on the Arlington property on which petitioner held a second mortgage as security for the note, thereby wiping out petitioner's second mortgage. In November or December, 1933 the first mortgage *521 obtained a deficiency judgment resulting from the foreclosure for $1,704.68 and had execution thereon returned unsatisfied. Petitioner thereafter in 1934 made an investigation which disclosed that neither Louis J. Bennett nor Jennie Bennett had any property which petitioner could attach or realize upon. In 1934 petitioner charged off the balance of $300. remaining unpaid on the note in question. In 1930 petitioner made two loans to Morris Weintraub aggregating $300. As security for those loans and also for an additional loan of $200. Morris Weintraub and his wife Annie gave petitioner a second mortgage on certain real estate located in North Smithfield, Rhode Island. The property was subject to a first mortgage in the amount of $2,300. Between 1930 and the fall of 1933 payments aggregating $200. were made to petitioner by the debtors on account of the mortgage debt leaving an unpaid balance of $300. In 1934 petitioner made an investigation in Rhode Island and found that the first mortgage had foreclosed and wiped out petitioner's second mortgage; that Morris Weintraub was dead; that Morris Weintraub had no estate and that his widow had moved to New York. Thereupon in 1934 petitioner *522 charged off the unpaid balance of $300. due on this note. In 1930 a law partnership, of which petitioner was a member, was dissolved. In 1931 petitioner's brother, Maurice H. Horblit, who had been a member of the bar since 1913, became associated with petitioner in the practice of law. On December 28, 1933 Maurice wrote the following letter to petitioner: This is to acknowledge and confirm that the following expresses our understanding this day reached and the only agreement now existing between us, respecting my employment to you, namely: - I am to render services for you during the year 1934, generally, insofar as my own practice permits, in consideration of $55.00 per week. In such special cases as you may, in writing, request my assistance during the year 1934, I am to be entitled to one-fifth of the net fees received in such cases, and said one-fifth is to be credited to me on account of my indebtedness to you for moneys heretofore, advanced by you to or for me. It is understood that this arrangement is only for the calendar year 1934, and that your decision is to be final and conclusive as to the identity of the special cases and matters with respect to which I may claim *523 credit, and also as to the amount of the net fee in any and all such cases and matters. It is understood that you may terminate this arrangement at your pleasure and that this arrangement is, under no circumstances, to extend or be construed to extend beyond December 31, 1934, except upon a writing to be signed by you, and in such event, only upon such terms and conditions as you shall specify in such writing. On January 1, 1934 Maurice owed petitioner $10,128.41 as a result of loans made in prior years. Maurice, in accordance with the agreement, worked for petitioner in 1934, receiving from petitioner $55. a week for his services. He also rendered assistance to petitioner in approximately 35 to 40 special cases. Petitioner received fees on these special cases amounting to $42,892.35 which fees were deposited in a special account. At the end of 1934 petitioner had an accounting with his brother in respect of these fees. Pursuant to their agreement petitioner credited Maurice with 20 per centum of the fees, namely, $8,578.47 on the indebtedness of $10,128.41. Maurice reported his share of the fees in his income tax return for the year 1934. Opinion VAN FOSSAN, Judge: The first *524 issue involves the deductibility of bad debts aggregating $6,445. The first debt charged off by petitioner was in the sum of $3,168 owed to him by William H. Burgess. The record indicates that the estate of Burgess as plaintiff had suits pending for the recovery of large amounts. These suits were not disposed of until late in 1933. The Burgess estate was rendered completely insolvent in 1934 as a result of a $63,841.60 judgment recovered against it in that year by one Dorothy G. Hall. Also, in March 1934 petitioner, as counsel for the estate, was notified that a building in which Burgess, at the time of his death, had had an interest was being sold for taxes. From these circumstances we conclude that petitioner acted reasonably in ascertaining the debt to be worthless in 1934. With regard to the requirement of charge-off, petitioner testified that he kept no books but made a notation of the charge-off on a card. Such a notation satisfies the statute. Accordingly, we hold petitioner entitled to the bad debt deduction of $3,168. A second debt deducted by petitioner for the year 1934 was owed by Max M. Kalman. From our findings of fact it is obvious that petitioner is entitled to this *525 deduction. Petitioner's testimony was that Kalman made payment from time to time on other small loans and kept promising until 1934 that when he got through paying on the small loans he would start on those in question. In this situation it would seem that until 1934 petitioner had a reasonable expectation of collecting the debt. In 1934 the Municipal Civil Court of Boston dismissed supplementary proceedings against the debtor declaring that he had "no property and is not able to pay." This was sufficient justification for charging off the debt. We hold petitioner entitled to a bad debt deduction on the Kalman loans. As to the debt in the sum of $377 which petitioner claims is owed by Thomas M. Vinson, we are unable to determine from the record whether the debt was actually owed by Thomas M. Vinson or by the Estate of John T. Collins, of which Thomas M. Vinson was administrator. Petitioner testified that the patent which Vinson wished to develop, had been issued to Vinson as administrator of the estate of John T. Collins. If this be so, Vinson borrowed the money from petitioner on behalf of the estate and it was the estate, not Vinson, which was petitioner's debtor. Petitioner has *526 failed to prove that the debt was uncollectible from the estate. Therefore, we sustain respondent's determination that petitioner is not entitled to a bad debt deduction for the amount which he claims was owed to him by Vinson. The next item is the deduction of $300 for a debt owed on a joint and several note by Louis J. and Jennie Bennett. This note was secured by a second mortgage on real estate. The record indicates that Louis J. Bennett filed a voluntary petition in bankruptcy in 1932 and received his discharge in 1933. Neither petitioner's note nor the real estate which secured it was scheduled in the bankruptcy proceedings. In 1933 the first mortgage of the real estate which secured petitioner's note foreclosed, obtaining a deficiency judgment of $1,704.68 execution on which was returned unsatisfied. Since petitioner was the second mortgagee, we may reasonably assume that he was fully advised of the mortgage foreclosure and perhaps was made a party to the suit and informed of the various steps taken. Thus, we must attribute to petitioner in 1933 knowledge of the $1,704.68 deficiency judgment obtained by the first mortgagee. This, together with the debtor's discharge in bankruptcy *527 in 1933, constituted such clear proof of the worthlessness of the debt in 1933, at least so far as Louis J. Bennett was concerned, that we believe that petitioner should have known of such worthlessness. As was stated in , by the Circuit Court of Appeals for the Fifth Circuit: Honesty of belief in the taxpayer is not conclusive, nor binding on the board. It is the province of the board to determine, on a review of all facts and circumstances surrounding the particular debt sought to be deducted, whether the taxpayer knew or ought to have known its worthlessness in a prior year. If knowledge of the worthlessness of a debt sought to be deducted, can thus be brought home to the taxpayer, it cannot be said that the worthlessness was ascertained in the subsequent year, when it is actually charged off. See also . Petitioner also failed satisfactorily to establish that he ascertained in 1934 the inability of Jennie Bennett, wife of Louis J. Bennett and co-maker of the note, to pay the $300. He testified that he thought Jennie Bennett "had some real estate *528 of her own at one time, and after the depression in 1929 * * * where there were so many foreclosures, she was wiped out of her equity." This, together with the knowledge of the deficiency judgment obtained against her in the foreclosure proceedings in 1933, was such that petitioner should have known prior to 1934 of her inability to pay the $300outstanding balance on the note. Accordingly, we hold that petitioner is not entitled to this deduction. As to the $300 debt due from Morris and Annie Weintraub, we have no evidence to show Annie Weintraub's inability to pay the debt. Petitioner testified that the first mortgagee, by foreclosure, wiped out his second mortgage which served as security for this debt and that Morris Weintraub had died leaving no estate. However, there is nothing in the record to indicate that Annie Weintraub was unable to pay the debt. She was a party to the second mortgage and we assume in the absence of evidence to the contrary that she was personally liable for the debt. Therefore, we affirm respondent's determination with respect to the deduction of this debt. The second issue is whether petitioner is taxable on the $8,578.47 which he received as fees but *529 credited against a debt owed by his brother, Maurice. Pursuant to an agreement Maurice was entitled to one-fifth of fees in special cases in which he assisted petitioner in 1934. One-fifth of such fees amounted to $8,578.47 and petitioner in 1934 gave Maurice credit for this amount on an indebtedness owed by Maurice to petitioner. Petitioner makes two alternative contentions: (1) petitioner received the $8,578.47 for the account of his brother, the funds being impressed with a trust, or (2) the amount in question represented compensation paid by petitioner for personal services actually rendered by his brother, in which event, although required to report the item in gross income, petitioner would be entitled to a deduction in the same amount. We believe the latter the true situation of the parties. The contract between the brothers was one of employment, petitioner being the employer. The fact that petitioner did not physically pay over the amount to Maurice is immaterial since he used it to reduce Maurice's debt to him. We accordingly hold that petitioner should have returned the item as income but that he is entitled to a deduction of the same amount as an ordinary and necessary *530 business expense. Decision will be entered under Rule 50.